## CRUME v. RIVERS, Adm'r.

No. 26402. Sept. 29, 1936.

Rehearing Denied Nov. 24, 1936.

Application for Leave to File Second Petition for Rehearing Denied Dec. 15, 1936.

R. M. Cavanaugh and C. B. McCrory, for plaintiff in error.

Merrick A. Whipple and C. D. Lewis, for defendant in error.

PER CURIAM. This is an appeal from a judgment of the district court of Okmulgee county, which reversed in part a judgment of the county court of Okmulgee county and surcharged the account of the plaintiff in error in a guardianship matter.

The salient facts, as shown by the record before us, are substantially as follows: The plaintiff in error was the guardian of one Sealey Alexander, a minor, for several years prior to and until said ward attained his majority in September, 1917, and thereafter plaintiff in error, acting under a power of attorney, transacted the business of said Sealey Alexander until January, 1920, at which time, upon application, he was again appointed by the county court of Okmulgee county a guardian of the estate of the said Sealey Alexander, who was adjudged to be an incompetent. Plaintiff in error continued to act as such guardian under the last-named appointment until March, 1928, at which time he resigned and was succeeded in office by one Preston L. Nicholas. On March 13, 1928, the plaintiff in error filed his final report as guardian of the estate of Sealey Alexander, and his successor took exception to this report. Upon a hearing had thereon in the county court the exceptions were overruled and denied, and the report approved as filed. Nicholas, as guardian, prosecuted an appeal from this judgment to the district court of Okmulgee county. On January 10, 1932, while this appeal was pending, the ward, Sealey Alexander, departed this life, and A. B. Rivers was appointed administrator of his estate and was substituted in the place of guardian, Preston L. Nicholas, in the suit pending in the district court and prosecuted the same to conclusion. The district court made numerous findings of fact and drew its conclusions of law thereon, whereunder the previous order and judgment of the county court was sustained, with the exception of one transaction which involved the transfer by the guardian (plaintiff in error) to his wife of a certain note and mortgage which belonged to his ward's estate, and ordered the guardian's account surcharged as to this item. This note and mortgage represented the sum of $10,000 and was regularly reported by the guardian as an asset of the estate of his ward in all reports filed with the county court up to and including the report filed on July 18, 1921. In the interim between the report of July 18, 1921, and the report filed in January, 1922, the Bank of Commerce of Okmulgee failed. In the report filed by the plaintiff in error in the county court January, 1922, he made no mention of the note and mortgage, but reported therein that his ward owned $10,000 in time certificates of deposit in the Bank of Commerce. The testimony of the guardian was to the effect that his wife owned about $19,000 in time certificates of deposit in the Bank of Commerce in August, 1921; that these certificates of deposit were in the name of the plaintiff in error; that he had talked with the county judge relative to making some improvements on other real estate belonging to his ward, and in order to obtain ready money for this purpose had transferred ten of the time certificates of deposit, of the face value of $1,000 each, to his ward's estate by indorsing the same in blank and placing them in his safe-deposit box with other papers belonging to his ward, and at the time had transferred the $10,000 note and mortgage of his ward to the guardian's wife. No authority from the county court of Okmulgee county, either to transfer the note and mortgage or to make an investment for his ward in the certificates of deposit, was ever applied for or obtained. After the failure of the bank, plaintiff in error continued to act as guardian for Sealey Alexander, and received numerous dividends from the failed bank, which he applied as credits on the time certificates, amounting in all to approximately 50 cents on the dollar. It appears from the guardian's testimony that none of the time certificates were ever presented to the bank for payment prior to the bank's failure, and that no money had ever been received on said certificates outside of the dividends paid by the bank after its failure.

The plaintiff in error assigns 36 specifications of error here and presents and argues the same at length under various titles and subheads, which we deem unnecessary to discuss seriatim. It will suffice to say that this court is not impressed with technical objections which go to the form or manner of a proceeding rather than the justice of the conclusions reached and the judgment rendered. If the act of the plaintiff in error in transferring the note and mortgage of his ward to his wife is justifiable as a matter of law, then the judgment of the trial court should be reversed, otherwise it should be affirmed.

With this thought in view, let us see just what happened. We find that plaintiff in error held certain time certificate deposits in his name which he says were the property of his wife; that these certificates of deposit were in effect merely promissory notes. As we have said in Moon Motor Car Co. v. State ex rel. Shull, 149 Okla. 190, 1 P. (2d) 358:

"There appears nothing more than the promissory notes of the bank payable at a future date, and that is the legal effect of a certificate of deposit in general terms. Morse on Banks and Banking (5th Ed.) vol. 1, sec. 298; Miller v. Austin, 54 U. S. 218, 14 L. Ed. 119; Kilgore v. Bulkley, 14 Conn. 363. And they create no trust relationship, but merely that of debtor and creditor. Morse on Banks and Banking, sec. 298, supra. And where money is left with a bank for a fixed time at interest, it becomes to all intents and purposes a loan. City of Aberdeen v. National Surety Co. 151 Wash. 55, 275 P. 62, 65 L. R. A. 794; In re Law's Estate, 144 Pa. 499, 22 Atl. 831, 14 L. R. A. 103; State v. McFetridge, 84 Wis. 473, 54 N. W. 1, 998, 20 L. R. A. 223; Pocatello v. Fargo, 41 Idaho, 432, 242 P. 297."

Like any other promissory note a certificate of deposit may or may not be paid by the maker upon its due date or when presented for payment; therefore, when plaintiff in error lays down as his major premise the proposition that the certificates of deposit were the equivalent of money he makes a vital error. The major premise being false, all conclusions and deductions based thereon are likewise false and untenable. Plaintiff in error relies upon the holding of this court in Bank of Welch v. Cabell, 52 Okla. 190, 152 P. 844, and Mason v. Ackley, 52 Okla. 157, 152 P. 846, to sustain his contentions on this appeal. However, the plaintiff in error overlooks the fact that the above cases are limited to those situations where the guardian collects the full amount due on a note and do not in any manner permit or authorize a sale by guardian of his ward's negotiable papers for any other than money, and then only for the full amount. As we said in Bank of Welch v. Cabell, supra:

"The note is for a sum certain, and no possible harm can come to the estate of the ward **if this sum is collected,** whether before or at its maturity. In the case of a lease, the guardian may make a bad bargain, and thus injure his ward, but if he **collects the full amount due** on the note, or sells it for **the amount due thereon,** no management or control is necessary, for the ward can by no possibility come to harm. If the guardian **fails to account for the** **amount so coming into his hands,** his bond is liable therefor, whether he collects the note at or before maturity, or sells it to another." (Emphasis ours.)

Should we ignore the plain facts in this case and treat the certificates of deposit as money, it would not help the case of the plaintiff in error, for admittedly the guardian did not receive the money represented by the time certificates of deposit, and did not present them for payment, and did not place them on deposit to the account of his ward, except to endorse the same and place them in his own private box with other papers belonging to the ward. This was merely a transfer or attempted transfer of one piece of paper for another. It will not do to say that had the guardian obtained the money, his ward would have been in no better condition, for had he obtained the money and placed it in his deposit box, as he did the time certificates, most certainly the money would have been available to his ward. However, this discussion is beside the point, as will later be observed. Before the plaintiff in error is entitled to invoke the rule announced in the above-cited case, he must show that the consideration for the sale of his ward's note was for the full amount due thereon, and that it was actually paid in money and not by exchange for another chose in action, irrespective of what name any such chose in action might bear. Since by admission of plaintiff in error this was not done, the above-cited cases have no application to the situation here presented.

To discourage unfortunate situations such as presented herein, the Legislature of this state forbids transactions of this kind. Section 1314, O. S. 1931, provides as follows:

"No executor or administrator must directly, or indirectly, purchase any property of the estate he represents, nor must he be interested in any sale."

The provisions of the above section are also applicable to guardians. Vaughn v. Vaughn, 65 Okla. 1, 162 P. 1131. We have likewise held that the sale of a ward's land to the guardian's wife is void. Burton v. Compton, 50 Okla. 365, 150 P. 1080. We fail to see any distinction in principle as regards the sale of the ward's personalty, whether to the guardian directly or to his wife and thus to the guardian indirectly. Throwing the mantle of charity on this transaction and imputing to the plaintiff in error only the best of intentions and the utmost good faith in this transaction, we are of the opinion that attempted sale, trans-

fer, or exchange of the note and mortgage belonging to the ward to the guardian's wife was null, void, and otherwise ineffective on any theory. For the future guidance of guardians let it be emphatically stated that the laws as well as public policy of this state absolutely prohibit them from acquiring, either directly or indirectly, any kind or type of property belonging to their wards.

From what has been said it is apparent that the judgment of the district court of Okmulgee county was in all respects correct and proper, and therefore the same should be, and the same is hereby, affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, CORN, and GIBSON, JJ., concur.