**J. A. HENDRICKS, Administrator of the Estate of Mattie Mae Hendricks, Deceased, Plaintiff in Error,**

v.

**The GRANT COUNTY BANK, a Corporation, and David C. Hendricks, Defendants in Error.**

No. 40039.

Supreme Court of Oklahoma.

March 5, 1963.

Ellis W. Eddy, Medford, for plaintiff in error.

Drennan & Drennan by J. C. Drennan, Medford, for defendant in error, David C. Hendricks.

DAVISON, Justice.

The action involved in this appeal was originally instituted by Tom Hendricks, Guardian of Mattie Mae Hendricks, an incompetent, against The Grant County Bank and David C. Hendricks, to recover $4243.-60 represented by a certificate of deposit issued by the above bank and payable to the said Mattie Mae Hendricks or David C. Hendricks. After rendition of a judgment adverse to the guardian, Mattie Mae Hendricks died, and the matter was revived and

appeal to this court was made by J. A. Hendricks, Administrator of the Estate of said decedent.

The appellant contends that the judgment of the lower court is not sustained by the law or the evidence. Appellant contends that under the circumstances the guardian had the right to cash and collect the certificate of deposit. It is the position of David C. Hendricks that the evidence reflected the creation of a joint tenancy with right of survivorship, between him and Mattie, in the certificate of deposit and the funds represented by the instrument, and that the guardian has shown no right to any part of the money. The Grant County Bank has at all times been ready to pay the money in accordance with a final judgment in the action.

The facts and circumstances are to a great extent uncontroverted. Mattie Mae Hendricks was a widow of advanced years with one daughter and four sons, one of whom was David C. Hendricks. On September 9, 1958, Mattie went to the Grant County Bank in Medford, Oklahoma, and after a conversation with its president used a part of her account with the bank, by check, for the purchase of a $4000 certificate of deposit (No. 10088), reciting in pertinent part:

"THIS CERTIFIES THAT Mattie Mae Hendricks has deposited in this bank payable to the order of herself, or David C. Hendricks".

and due "6–12 months after date" with interest at 2½ percent per annum. Subsequently Mattie endorsed and surrendered the instrument to the bank and received a certificate of deposit (No. 10238) dated March 9, 1959, for $4000 payable to the order of herself or David C. Hendricks "6 or 12 months after date" at 3 percent interest. More than a year later, and on July 8, 1960, the wife of David C. Hendricks took this last certificate of deposit to the bank and endorsed her husband's name "David C. Hendricks" thereon. No contention is made or objection presented as to the validity of this endorsement. The bank added interest of $120 and issued its certificate of deposit No. 109, as of March 9, 1960, for $4120 for a term of 12 months at 3 percent and payable to the same parties as set forth in the previous certificates. This last certificate of deposit is the subject of the guardian's suit and on which, including interest, recovery is sought.

Prior to and concurrent with the above periods of time Mattie Mae Hendricks and David C. Hendricks were lessees as joint tenants of a safe deposit box in the vault of The First National Bank of Medford, Oklahoma, and on August 3, 1959, said lessees gave written authorization to Mrs. David Hendricks to have access to the box. The bank record reflects Mattie last entered the box on May 5, 1959; that in addition to other times Mrs. David Hendricks was granted access on two occasions on July 8, 1960; and that the guardian examined the box on November 28, 1960, and on December 28, 1960.

Mattie was declared incompetent and guardian was appointed in September, 1960. Judgment was rendered for defendant David C. Hendricks on October 19, 1961. Mattie died January 14, 1962.

At the trial the guardian was his only witness. He stated that Mattie had been in the hospital for about 2 years at an expense of about $6000 to $7000 per year and could not appear; that he found the subject certificate of deposit in the deposit box and presented it to Grant County Bank for payment and reissue in Mattie's name and was told he had a right to cash it, but that the bank did not like to cash certificates until they were due; and that when he again presented the certificate on the due date, for cash and reissue, the bank refused for the reason it might have to pay it again. The certificate was then replaced in the deposit box.

The defendant David C. Hendricks presented a number of witnesses. The officer of Grant County Bank, with whom Mattie talked at the time of the issuance of the initial certificate of deposit on September 9, 1958, stated that at that time the language

appearing in the certificate of deposit was the words regularly used by the bank in the preparation of a certificate for persons requesting the issuance of a certificate providing for joint tenancy with right of survivorship and that the subject certificate of deposit was prepared to carry out what Mattie told him; that it was his understanding that either of the parties "could get it, or the survivor would get it; and that he would have cashed the certificate for David C. Hendricks if he had endorsed it and "had walked in and asked for it" * * * "and the same thing goes for her" (Mattie).

The defendant, David C. Hendricks, testified that Mattie told him of the certificate of deposit for use of either of them on any due date if either needed it and that it was kept in a box at the First National Bank and as far as he knew she never needed it. This testimony is supported by that of David's sister, who quoted Mattie as saying relative to the time deposit in the Grant County Bank in Mattie's and David's name: "She says, 'It is for either of us that needs it', and she says, 'If I go first, it is his; if he goes first, it is mine.'" and further quoting Mattie: "* * * she says, 'He had a good job offered him and he didn't take it, he stayed with me and helped me', so she says, 'I feel like I should reimburse him.'"

Two other witnesses, including a nonrelative, testified Mattie informed them of the "time deposit" made in Mattie's and David's names.

We will first dispose of the question as to whether the facts and circumstances created a relationship of joint tenancy with right of survivorship between Mattie and David in the certificate of deposit and the funds represented by the instrument. In this connection we make the observation that, if such relationship was established at the time of issuance of the first certificate, there is nothing in the record of any conscious act of the parties thereto that would render such relationship inapplicable to the last certificate.

■ A certificate of deposit is essentially a promissory note, creating the relation of debtor and creditor, and consequently a chose in action. Crume v. Rivers, 178 Okl. 363, 61 P.2d 862.

■ The wording of the certificate of deposit did not of itself have the force and effect of creating a joint tenancy with right of survivorship. However such a relationship may be established by proof of facts and circumstances evidencing an intelligent intention on the part of the person whose funds were invested in the certificate to create a condition embracing the essential elements of joint ownership with right of survivorship. Dyer v. Vann, Okl., 359 P.2d 1061 and Clift v. Grooms, Okl., 331 P.2d 382.

■ Under the facts and circumstances, as clearly shown by the evidence, the certificate of deposit could have been cashed by either Mattie or David upon endorsement and surrender of the instrument to the Grant County Bank; the certificate was deposited in a bank deposit box that was leased and accessible to both Mattie and David; and it is obvious that David, acting through his wife, on one occasion exercised possessory and ownership rights over the certificate in having the same reissued. There is also the uncontroverted testimony of statements by Mattie expressing directly or in substance her gift and an intent to create with David a joint tenancy with right of survivorship. In Dyer v. Vann, supra, we quoted with approval from 7 Am.Jur., Banks, Sec. 431, pp. 304, 305, as follows:

"'The majority of cases, however, hold that if the intention of the donor is to vest a present right to share in the deposits constituting the joint account, such an act constitutes a gift that can be sustained. This is likewise true, and the transaction constitutes a completed gift, despite a reserved power of revocation. * * *'"

It is our opinion that the acts of Mattie did in fact constitute a gift and established a joint tenancy with right of survivorship as to David C. Hendricks in the certificate of deposit and the funds it represented.

The cases cited by appellant in support of his position are not in point. In Hickman v. Barrett, 175 Okl. 262, 52 P.2d 40, we found the evidence failed to show any expression or manifestation, during the lifetime of the purchaser of the certificate, of any intention to make a gift of the funds evidenced by the certificate. In Jonte v. English, 171 Okl. 291, 40 P.2d 646, the evidence reflected that there was no immediate gift of the party's bank account funds to his co-depositor, but only an intent that any balance would belong to the co-depositor, and was in the nature of a testamentary disposition.

Appellant further contends that even though there be a joint tenancy with right of survivorship still Mattie, during her lifetime and acting through her guardian, was entitled to collect the funds represented by the certificate of deposit. This contention disregards the effect of Mattie's incompetency and the appointment of the guardian. In this connection the petition alleged demand for payment of the certificate and refusal of payment for the full amount due on the certificate; the answer of David alleged inter alia the joint tenancy and that the guardian had no power to exercise a personal right of his ward with respect to the certificate except where necessary to support and maintenance of the ward; and the guardian's reply made this an issue. There was no issue of fraud, undue influence or incompetence in connection with the certificate of deposit.

Title 30 O.S.1961 §§ 15 and 16, provide in pertinent part that a guardian of the person and property of his ward is charged with the custody and must look to the ward's support and health and keep safely the ward's property. Title 58 O.S.1961 § 853, also states the guardian of an incompetent person shall have the management of his estate. In Cooper v. Hembree, 194 Okl. 465, 152 P.2d 695, it is stated that both the legal and beneficial title to the property of an incompetent ward is in the ward rather than the guardian. See also Chancellor v. Chancellor, 202 Okl. 389, 214 P.2d 261.

The original certificate of deposit was issued and subsequently renewed under the circumstances heretofore related. Any determination on the part of Mattie to cash or withdraw the funds represented by the certificate would have involved the exercise of personal discretion. In 44 C.J.S. Insane Persons § 49, p. 134, the rule is stated:

"The guardian * * * of a mental incompetent does not become his alter ego, and is not empowered by virtue of his office to act for the incompetent in matters involving the exercise of a personal discretion so as to change an act performed by the incompetent while mentally normal. * * *"

In the case of Howard v. Imes, 265 Ala. 298, 90 So.2d 818, 62 A.L.R.2d 1086, there was presented the question of the right of a guardian to withdraw all the funds of a joint tenancy bank account. That court in view of the circumstances and the above quoted rule and citing supporting decisions, stated:

"In applying the rule it has been specifically held that the guardian of a non compos mentis cannot withdraw all the funds in a joint account except for the ward's necessities, since such complete withdrawal would be the exercise of a personal right of the ward. * * *"

See also Annotation at 62 A.L.R.2d 1091.

In fact it appears from the evidence that Mattie incorporated in the arrangement by which the joint tenancy was created the factor that the funds of the joint tenancy should not be disturbed unless a need arose for their use. This is additional support for the proposition that any use of the funds involved the exercise of personal discretion.

In the instant case it does not appear that the guardian was acting pursuant to any order of the county court that appointed him but based his action upon the alleged personal right of his ward to the funds. As shown there was evidence of expense in maintaining his ward but there was no showing of need for use of any part of the funds represented by the certificate. In fact the

record reflects that Mattie was possessed of other substantial assets.

Appellant's cited case of Brown v. Eastman National Bank of Newkirk, Okl., 291 P.2d 828, is not in point. That was an action by a joint tenant depositor against the bank and involved only the liability of the bank for failure to honor an instruction (without giving reasons) to refuse payment of the check of the other co-depositor, and was not a dispute between co-depositors.

It is our opinion that the conclusion and judgment of the lower court was correct.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and WELCH, JOHNSON, WILLIAMS, JACKSON and BERRY, JJ., concur.